**FILED**

2017 May-04  PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| THERESA A. PISTOLESI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| UNUM GROUP CORPORATION, | ) |
| f/k/a UNUMPROVIDENT CORPORATION; | ) |
| UNUM LIFE INSURANCE COMPANY OF | ) |
| AMERICA; TIME WARNER CABLE | ) |
| BENEFITS PLAN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT[1]

### Executive Statement

Defendants have denied Plaintiff's benefits based upon a new interpretation of a policy provision that it has not applied for more than a decade. Plaintiff became fully disabled in 2003, and Defendants arbitrarily and capriciously denied her benefits in 2004. However, they saw the error of their ways and put Plaintiff back on claim as part of a 2006 settlement agreement to halt the ongoing litigation.

In 2016, Defendants decided to interpret the "self-reported symptoms" provision in the policy, which limits benefits to 2 years, as precluding all fibromyalgia benefits

---

[1]This document has been drafted by counsel for the Plaintiff on Plaintiff's behalf based in part on facts presented by Plaintiff but does not support the inference that Plaintiff has the knowledge necessary to understand the specific legal terminology used herein. Furthermore, this document is intended to provide <u>notice</u> of the claims supported by the facts set forth herein. It is not intended to be an exhaustive compilation of all facts or all legal claims supported by these facts.

beyond 2 years. Defendants' new re-write of the policy was a new, arbitrary method to cut persons like Plaintiff off from their benefits and save some money in the process. Defendants have unsuccessfully attempted to test the waters regarding this new theory in multiple courts around the country, but those efforts have repeatedly fallen flat.

## INTRODUCTION

This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a)(1), in order to secure benefits due to Plaintiff through an Employee Welfare Benefit Plan under the terms of which Plaintiff is a defined beneficiary or, in the alternative, 29 U.S.C. § 1132(a)(3), to seek relief for the breaches of fiduciary duties owed to Plaintiff, to seek replacement of those fiduciaries who have breached their fiduciary duties, and to further enjoin those acts or practices which violate Defendants' fiduciary duties owed to the Plaintiff as set forth within 29 U.S.C. § 1104.

## PARTIES

1.      Plaintiff, Theresa A. Pistolesi, is a citizen of the United States.

2.      Defendant Unum Life Insurance Company of America is, upon information and belief, a Maine corporation with its principal place of business in Maine.

3.      Defendant Unum Life Insurance Company of America is a plan "fiduciary" under the employee welfare benefit plan.

4.      Defendant Unum Life Insurance Company of America is an insurance company authorized to transact the business of insurance in the State of Alabama and further served as underwriter for the employee welfare benefit plan

5.      Defendant Unum Life Insurance Company of America may be served with process by serving CSC Lawyers Incorporating Srv. Inc., 150 South Perry Street, Montgomery, AL 36104.

6.      Defendant Unum Group Corporation exercised authority or control respecting the management or disposition of the plan assets, and is therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

7.      Defendant Unum Group Corporation provides services to the disability plan at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

8.      Defendant Unum Group Corporation is, upon information and belief, a Delaware Corporation whose principal place of business is Chattanooga, Tennessee.

9.      Defendant Unum Life Insurance Company of America may be served with process by serving CSC Lawyers Incorporating Srv. Inc., 150 South Perry Street, Montgomery, AL 36104.

10.     Defendant Time Warner Cable Benefits Plan is an "employee welfare benefit plan" as defined within 29 U.S.C. § 1001, et. seq.,  and may be served with process by serving Vice President and Associate General Counsel (Litigation), Time Warner Cable, Inc., c/o AOL Time Warner, 75 Rockefeller Plaza, New York, New York

10019.

## JURISDICTION AND VENUE

11.     Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132 (e) confers Jurisdiction upon the District Courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined within 29 U. S. C. § 1001, et. seq.

12.     Jurisdiction is further appropriate under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity exists between the parties.

13.     Venue is appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District. Therefore, venue is proper within the Northern District of Alabama pursuant to 29 U.S.C. § 1132(e)(2) given that "the breach took place" within this district and that Defendant(s) may be found here.

## EXHAUSTION OF PLAN REMEDIES

14.     Pursuant to the terms of the plan(s), the Plaintiff has exhausted all Plan Remedies available. As such, this case is ripe for judicial determination.

## THE BENEFIT AND/OR PENSION PLAN(S)

15.     Upon information and belief, the employee welfare benefit plan at issue was funded in part by an insurance policy(ies) sold by Defendant Unum Life Insurance Company of America, which is a wholly owned subsidiary of Defendant Unum Group

Corporation.

16.     The Plaintiff's use of the term "Plan" is intended to include any long term disability, life, accidental death and dismemberment or short term disability insurance policy(ies) as well as any other benefits provided by the Plaintiff's employer that the Plaintiff would be entitled to upon a finding that the Plaintiff is deemed disabled as that term is defined within the plan(s).

17.     Upon information and belief, the insurance policy(ies) issued to the Plaintiff's former employer, Time Warner Entertainment Company, L.P. d/b/a Time Warner Cable, were underwritten by the Defendant Unum Life Insurance Company of America.

18.     The Plaintiff is a participant or beneficiary in the Time Warner Cable Benefits Plan and is covered by the insurance policies(ies) providing benefits under the Time Warner Cable Benefits Plan.

19.     The Defendants Unum Life Insurance Company of America and Unum Group Corporation are entities doing business in the state of Alabama, and upon information and belief, sold and/or provided services for certain insurance policy(ies) provided to the employees of the Plaintiffs employer.

20.     The Plaintiff obtained insurance coverage from Unum Life Insurance Company of America, who serves as underwriter for the Time Warner Cable Benefits Plan. As such, Unum Life Insurance Company of America constitutes a "party in interest", and furthermore, a "fiduciary" as those terms are defined within ERISA, 29

U.S.C. § 1001, <u>et</u>. <u>seq</u>.

21.     Unum Life Insurance Company of America contracted with or presently have a contract for services with the Defendant Unum Group Corporation, whereby the Defendant Unum Group Corporation provides administrative duties with regard to the Time Warner Cable Benefits Plan.

22.     Therefore, the Defendant Unum Group Corporation is both a "party in interest", and/or a "co-fiduciary", and/or "fiduciary" as those terms are defined within ERISA, 29 U.S.C. § 1001, <u>et</u>. <u>seq</u>.

23.     The group insurance policy(ies) were purchased by the Plaintiff's employer for the purpose of conferring a benefit upon the Plaintiff, and as such, said policy(ies) qualify as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and the Plaintiff qualifies as a beneficiary under said benefit plan as that term is used in 29 U.S.C. § 1132.

24.     Further, upon information and belief, the Plaintiff's employer provided additional benefits by way of employee pension plan(s) or additional employee welfare benefit plans for the purpose of conferring benefits to the Plaintiff in the event the Plaintiff were to become disabled, and said plan(s) qualify as employee welfare benefit plan(s) and/or employee pension plan(s) as defined in 29 U.S.C. § 1001, <u>et</u>. <u>seq</u>., and the Plaintiff qualifies as a beneficiary under said plan(s) as that term is defined in 29 U.S.C. § 1001, <u>et</u>. <u>seq</u>.

25.     The Defendant Unum Group Corporation customer care center claims

manual defines the administrative record in an ERISA case to be all "relevant" documents as that is defined within Unum Group Corporation's own claims manual.

26. Unum Group's customer care center claims manual defines the term "relevant" documents as: "relevant documents are those documents that contain information that we relied upon to make the claims decision."

27. However, the Department of Labor, at 29 CFR 2560.503-1(h)(2)(iii) states that the ERISA record should contain "all documents, records and other information relevant to [the] claim for benefits."

28. The Department of Labor has defined the term "relevant" as all documents, records or other information which was "relied upon in making of the benefit determination," or "was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination." As such, Unum Group's definition of what constitutes the ERISA record is at odds with the Department of Labor's definition of what constitutes the ERISA record, and as such Unum Group has failed to provide a full and fair administrative process and should not be shown deference with regard to its arbitrary designation of what constitutes the "administrative record."

## STATEMENT OF FACTS

29. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

7

30.     Plaintiff was employed by Time Warner Entertainment Company, L.P. d/b/a Time Warner Cable, as an Advertising Sales Account Executive at the time the Plaintiff filed the initial claim for benefits on or about September of 2003.

31.     Plaintiff and/or Plaintiff's employer paid premiums to the Defendants. In return, the Plaintiff was covered under the terms of the Plan(s).

32.     The Plan(s) provided payment and / or benefits in the event the Plaintiff were to become disabled.

33.     The Plaintiff ceased work due to a disability while covered under the Plan(s).

34.     The Plaintiff timely filed an application for benefits under the Plan(s).

35.     Under the terms of the Plan(s), the Plaintiff is deemed disabled if the Plaintiff was unable to earn specified income levels as set forth in the Plan(s), or is unable to perform each of the material duties of the Plaintiff's occupation.

36.     Theresa A. Pistolesi suffers from and has been diagnosed with Osteoarthritis, fibromyalgia, and other disabling conditions.

37.     Based upon those conditions described in the medical records previously provided to the Defendants, the Plaintiff was disabled and suffered declines in the Plaintiff's income as a result of said disabilities, thereby meeting the definition of the term disabled as it is used in the Plan(s).

38.     On or about September of 2003, the Plaintiff applied for benefits from the Defendants.

39.     Upon information and belief, the Plaintiff initially received partial benefits from the Defendants beginning on or about July 2003 until October 2003. LTD benefits were paid November 2003 until February 2004.

40.     The Defendants payments of benefits were made without reservation of rights.

41.     In March 2004, benefits were discontinued.

42.     Upon information and belief, the Defendants denied the Plaintiff benefits on the basis that Plaintiff was not "disabled" as that term is defined within the Plan(s).

43.     The Defendants arbitrarily, capriciously, and without any reasonable basis refused to provide benefits due to the Plaintiff.

44.     Plaintiff filed *Pistolesi v. Unum Provident Corp.*, No. 1:05-cv-336 (E.D. Ten. 2005) as a result of the abovementioned actions.

45.     The parties eventually settled that action and Defendants put Plaintiff back on claim.

46.     Defendants continued to pay Plaintiff benefits for the next decade until denying Plaintiff's benefits on April 26, 2016.

47.     Defendants' stated reasons for that denial were that 1) Plaintiff could perform the duties of her occupation and 2) the mental illness and self-reported symptoms provisions of the policy.

48.     Defendants' decision to apply the 2-year self-reported exception more than a decade after it was set to expire was a violation of the parties' settlement

agreement, was waived, is barred by laches, and is barred by estoppel.

49.     Defendants' decision regarding Plaintiff's physical abilities was unreasonable and disregarded the medical evidence.

50.     The Plaintiff filed timely notice of appeal of the Defendants' decisions to deny benefits and requested Plaintiff's entire claim file.

51.     Defendants did not provide the entire claim file, and this was pointed out on numerous occasions.

52.     The Defendants notified the Plaintiff that the appellate review of the claim was complete and refused to overturn the previous denial of benefits on November 17, 2016.

53.     This appeal exhausted the Plaintiff's plan remedy process.

54.     That appeal was based upon the medical opinions of Defendants' claims handlers, and it contradicted every medical opinion offered in the file, including that of Defendants' paid medical reviewers.

55.     Plaintiff subsequently sent a letter requesting the entire claim file and pointing out the numerous errors committed in the denial.

56.     On January 23, 2017, the parties then entered into a tolling agreement to conduct settlement negotiations.

57.     Defendants let that agreement expire without comment on April 24, 2017.

58.     Upon information and belief the Plaintiff's claim for disability benefits pursuant to the terms of the pension plan were denied, and the Defendants have

refused to overturn their denial of benefits.

59.     The plan documents do not grant sufficient discretion, or in the alternative, any purported grant of discretion is insufficient to grant discretion to the Defendant that made the decision to deny benefits.

60.     The person or persons who made the decision to deny benefits are employees of Unum Group Corporation.

61.     The person or persons who made the decision to deny benefits, while employed by Unum Group Corporation, claim to have made the decision to deny benefits "on behalf of" Unum Life Insurance Company of America.

62.     The Plan(s) at issue do not contain language designating Unum Group Corporation or Unum Group Corporation employees as the entity and / or persons granted discretion to make decisions under the terms of the insurance policy(ies) or welfare benefit plan at issue.

63.     The Unum Group Corporation physicians who made recommendations to the claims handler at Unum Group regarding the Plaintiff's claim, take part in bonus systems and award programs which are based in part upon company profitability.

64.     The Unum Group Corporation claims handlers who handle the Plaintiff's claim for benefits, received bonuses based, in part, upon company profitability.

65.     The consultants, and nurses who took part in the management of the Plaintiff's claim, received bonuses and awards based in part, upon company profitability.

66.     Unum Life Insurance Company of America is granted discretion to make decisions under the terms of the insurance policy(ies) or welfare benefit plan at issue.

67.     Unum Life Insurance Company of America is the only Defendant granted discretion to make decisions under the terms of the insurance policy(ies) or welfare benefit plan at issue.

68.     The standard of review of the decision to deny benefits is *de novo* pursuant to the United States Supreme Court decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

69.     The Defendant that made the decision to deny benefits would pay any benefits due out of that same Defendant's funds.

70.     The Defendant that made the decision to deny benefits was under a perpetual conflict of interest because the benefits would have been paid out of that same Defendant's funds.

71.     The Defendant that made the decision to deny benefits allowed its concern over the funds to be paid to influence its decision making process.

72.     The Defendant that made the decision to deny benefits considered the applicability of ERISA in making said decision to deny benefits.

73.     Unum Life Insurance Company of America sold the insurance policy(ies) providing coverage under the terms of the employee benefit plan.

74.     Unum Life Insurance Company of America is a wholly owned and operated subsidiary of Unum Group Corporation, and Unum Group Corporation

employees participated in the assessment of the Plaintiff's claim.

75.     Unum Group employees, by operation of a general services agreement between Unum Group Corporation and Unum Life Insurance Company of America managed the claims process.

76.     Unum Life Insurance Company of America has a "service" agreement with Unum Group Corporation whereby Unum Group manages the claims process.

77.     Some of the Unum Group employees who participated in the administration of the Plaintiff's claim also participate in Unum Group Corporation's management incentive compensation program.

78.     Some of the Unum Group employees who participated in the administration of the Plaintiff's claim also participate in Unum Group Corporation's performance recognition plan.

79.     In order to receive bonuses or awards under the management incentive compensation program or the performance recognition program, Unum Group employees must meet certain criteria to be eligible.

80.     The individual criteria under the management incentive compensation program and the performance recognition program provide incentives to the Unum Group employees to deny claims.

<u>**HISTORY OF ABUSIVE CLAIMS PRACTICES**</u>

81.     Unum has a documented history of instructing, encouraging or incentivizing claims handlers to deny claims when ERISA applies that would not

otherwise be denied if state law were to govern.

82.     This claims denial strategy finds its inception in what has become known as the Lebeouf Report.

83.     That report – and certain internal documentation relating thereto– lays out a strategic approach whereby Unum convened an "ERISA Task Force" to implement a standard claims practice not only to "consider" the applicability of ERISA during the claims administration process, but to actively target "ERISA claims" for denial to "take advantage of ERISA protection."

84.     In an October 2, 1995 memorandum, Unum's Jeff McCall assessed the economic impact of re-packaging individual disability claims as ERISA claims as "significant." One particularly revealing portion of Mr. McCall's memorandum reads:

> The advantages of ERISA coverage in litigious situations are enormous: state law is preempted by federal law, there are no jury trials, there are no compensatory or punitive damages, relief is usually limited to the amount of benefit in question, and claims administrators may receive a deferential standard of review. The economic impact on Provident from having policies covered by ERISA could be significant. As an example, Glenn Felton identified 12 claim situations where we settled for $7.8 million in the aggregate.  If these 12 cases had been covered by ERISA, our liability would have been between zero and $0.5 million.

> The key for determining the applicability of ERISA is whether or not the employer "sponsors" or "endorses" the plan.  If the employer pays the premium, the policy would usually, but not always, be considered to be governed by ERISA. Salary allotment or payroll deduction arrangements, by themselves, do not necessarily mean that a policy is subject to ERISA. While our objective is to pay all valid claims and deny invalid claims, there are gray areas, and ERISA applicability may influence our course of action.

Memorandum of Jeff McCall (Exhibit 1). *See also*; *Rosen v. Provident Life & Accid. Ins. Co.,* 2015 U.S. Dist. LEXIS 10228 (N.D. Ala., Jan. 29, 2015).

85.     Thereafter, Unum found itself under investigation by several state departments of insurance between 2002 and 2004. A Multistate Market Conduct Examination was performed "to determine if the disability income claims handling practices of [Unum] reflected systemic 'unfair claim settlement practices' " in violation of applicable statutory law governing the insurance industry.

86.     After conducting a review of Unum's files, the multistate examination identified the following areas of concern:

- Excessive reliance upon in-house medical professionals;

- Unfair construction of attending physician or IME reports;

- Failure to evaluate the totality of the claimant's medical condition; and

- Inappropriate burden placed on claimants to justify eligibility for benefits . . . in which benefits were denied by the Companies on the grounds that the claimant had failed to provide "objective evidence" of a disabling condition.

(Exhibit 2, Report).

87.     The multistate investigation was resolved in November 2004. Unum agreed to comply with the terms of a Regulatory Settlement Agreement ("RSA") – including a second agreement with California specifically – which required Unum to

pay a substantial fine and to refrain from the unfair claims practices detailed above.

(Exhibit 3, Regulatory Settlement Agreements).

88.     Unfortunately, when it came to making *actual* changes to its unfair practices, Defendants did nothing more than the equivalent of re-arranging the *Titantic*'s deck chairs.

89.     Almost immediately after the execution of the RSA, Unum instructed its claims employees that although it was adopting enhanced claims procedures as a nod to the RSA it had signed, they should continue deciding claims in the same manner in which they had done in the past.

90.     In other words, Unum told its claims personnel that the RSA did not change what it had been doing before multistate investigation or the RSA and that the RSA did not impact the claims decisions to be made in the future.

91.     Consistent with this directive, Unum continued its earlier program incentivizing claims employees based on the amount of money they saved the company through LTD claim closures.

92.     Unum employees, including physicians and other medical resources who review claims, take part in bonus systems and award programs which are based in part on company profitability as well as being evaluated on a semi-annual and annual basis against those goals tied to company profitability.

93.     In order to receive bonuses or awards under Unum's management incentive program or the performance recognition program (a copy of which is attached

as <u>Exhibit 4</u>), Unum employees must meet certain criteria.

94.     Among other things, Unum sets goals for claim terminations, liability acceptance rates and reopen rate goals, among other measures, and ties meeting such goals to the awarding of performance compensation. (<u>Exhibit 5</u>, Unum Manager Toolkit).

95.     Unum's "Manager Toolkit" directs managers to cascade information to employees so that they align their interests with that of the company. *Id.* at 2.

96.     As Unum's own documents make clear, the more an individual or unit is perceived as contributing to the meeting of Unum's financial goals, the greater their share of the bonus pool. *Id.* at 24-32.

97.     Other documents reflect that targets and goals for claim closures are set down to the unit level and that there are goals set for open claim recoveries, i.e., ongoing claims, per day. (<u>Exhibit 6</u>, Unum Weekly Tracking Sheets; <u>Exhibit 7</u>, Unum Weekly Tracking Sheets).

98.     These goal documents are made available to the claim directors, the very individuals charged with deciding whether claims will be approved or denied and whether open claims will be terminated. (<u>Exhibit 8</u>, Unum IDI Milestone Review Documents from Unum's Claims Manual.)

99.     Unum utilizes a "balanced business scorecard" approach—at least down to the director level – to keep claims personnel informed throughout the year on whether the company is meeting the financial goals it sets for itself in order to trigger

incentive compensation. (Exhibit 9, Haas Dep., 112:11-16 and 115:14-22; *see also* Exhibit 10, Director Scorecards, Ex. 4 *supra*.).

100.   These scorecards are evidence of the continuation of Unum's earlier pre-RSA claims practices.

101.   Other Unum documents have also specifically referenced goals, expectations, projections and targets for closures.

102.   These results are tracked through an inventory tracking system (with the "inventory" being the claims being moved into and out of Unum's system).

103.   Claims personnel are graded in the manner in which their decision-making financially impacts the company based on tracking of the amount of reserves their activities save.

104.   Consistent with this culture, on information and belief, Unum claims personnel are influenced directly by their supervisors by way of "off-the-record" conversations and personal notes either lauding them for the number of closures achieved or, if their numbers are trending negatively, chastising them. Managers may also use similar tactics to encourage results or direct outcomes for specific claims.

105.   These evaluations are determinative as to whether claims employees may be considered candidates for future advancement, or alternatively, whether they are underperforming such that they should be considered at some point for termination.

106.   At the same time Unum has continued its unfair claims practices, it has endeavored since the execution of the RSA to brand itself as a "reinvented" insurance

company that no longer does these things. They even provide training on the regulatory settlement agreements to their employees.

107.   The individual criteria under these incentivization plans (which were applicable to the employees who were involved in Plaintiff's claims) incentivized Unum employees to deny claims without having any good faith basis for doing so.

108.   These incentives and other reasons caused Unum's claims handlers like the one who handled Plaintiff's claim to allow their own personal financial motivations to substitute for their rational decision making with respect to disability insurance claims.

109.   The foregoing presents exactly the same history of conduct that was recounted in a law review article by Professor Langbein cited by the Supreme Court in *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008).

110.   The bad faith here is exemplified in Unum's outward disregard of its own internal interpretation of what "disabled" means using nearly the same definition of that term in the policy here.

111.   For insureds like the Plaintiff, Unum considers such persons to meet its definition of "totally disabled" when they are not able to practice their profession any longer.

112.   Unum has described this as follows in its internal documentation citing to governing authorities interpreting this term: "[T]otal disability is not insurance upon one's business, but is a guarantee of continued personal fitness . . . The continued use of

physical vigor and energy in the performances of manual pursuits connected with his business . . . . ″

113.    Unum ignored this definition in Plaintiff's case.

114.    In other words, Defendants determined retroactively that these policies were too generous to the insured and they were targeted for denial based on profitability.

## COUNT I

### ACTION FOR BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

115.    Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

116.    The Plan(s) are deemed "employee welfare benefit plan(s)" and/or "employee pension plan(s)" as those terms are defined in 29 U.S.C. § 1001, et. seq.

117.    Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

118.    Plaintiff is disabled under the terms of the employee welfare benefit plan.

119.    Plaintiff is disabled under the terms of the employee pension plan.

120.    The decision to deny benefits was not supported by substantial evidence.

121.    The Defendants denied Plaintiff benefits to which Plaintiff was entitled under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan by refusing to provide or discontinuing payment of benefits.

122.    The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

123.    The decision making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

124.    The appellate procedures did not provide the Plaintiff a full and fair review.

125.    Defendants repeated refusal to provide the documents required under ERISA's claims procedures amounted to a denial of a full and fair review.

126.    The Defendants' actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

127.    As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for the Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan(s), in an amount equal to future benefits payable while the Plaintiff remains disabled under the terms of the Plan(s), and additional damages to be proven in the trial of this matter.

## JOINT AND SEVERAL LIABILITY AS TO ALL DEFENDANTS

128.    Should this Court determine that Unum Group Corporation is not a "fiduciary" or "party in interest" as those terms are defined within ERISA (see "Alternative Counts" below) and / or that no cause of action exists except that arising under 29 U.S.C. § 1132(a)(1)(B), then the Plaintiff would plead in the alternative that Unum Group is a proper party on the basis that Unum Group Corporation so dominates its subsidiary Unum Life Insurance Company of America, that Unum Group has complete control and domination of its subsidiary's finances, policy and business practices, and that Unum Life Insurance Company of America has no substantial separate existence of its own, and as such Unum Group Corporation should be held jointly and severally liable with Unum Life Insurance Company of America for any damages awarded under  29 U.S.C. § 1132(a)(1).

129.    Unum Life Insurance Company of America has no claims personnel.

130.    The personnel who worked on the Plaintiff's claim are Unum Group employees.

131.    Unum Group has asserted in prior litigation that Unum Group personnel "makes claims decisions on behalf of" Unum Life Insurance Company of America.

132.    Provident Life & Accident Insurance Company was incorporated in 1887, and then reincorporated as a stock company in 1910 under the name of Provident Life & Accident Insurance Company of Chattanooga, Tennessee.

133.     In 1935, the present name of Provident Life & Accident Insurance Company was adopted.

134.     In December of 1995, Provident Companies, Inc., was formed, and in March of 1996, Provident Life & Accident Insurance Company became a wholly owned subsidiary of Provident Companies, Inc., along with Provident Life & Casualty Insurance Company and Provident National Assurance Company.

135.     Approximately one year later, on or about April 29, 1996, it was announced that Provident Companies, Inc. acquired the Paul Revere Corporation which was the holding company for the Paul Revere Life Insurance Company. The Paul Revere Life Insurance Company became a wholly owned subsidiary of Provident Companies, Inc. (now known as Unum Group Corporation).

136.     On June 30, 1999, UNUM Life Insurance Company of America, along with its holding company, UNUM Corporation of Portland, Maine, merged with and into the Provident Companies, Inc., whereby UNUM Life Insurance Company of America and UNUM Corporation were dissolved, leaving Provident Companies, Inc., as the surviving corporation.

137.     Provident Companies, Inc. subsequently amended its charter and changed its name to UnumProvident.

138.     Unum Provident subsequently amended its charter and changed its name to Unum Group Corporation.

139.     Unum Group Corporation owns the following companies: The Paul

Revere Corporation, Unum Holding Company, Colonial Companies, Inc., and Provident Life and Casualty Insurance Company.

140.    Colonial Companies, Inc., which is owned by Unum Group Corporation, owns Colonial Life and Accident Insurance Company.

141.    The Paul Revere Corporation, which is owned by Unum Group Corporation, owns the Paul Revere Life Insurance Company.

142.    Unum Holding Company, which is owned by Unum Group Corporation, owns First Unum Life Insurance Company.

143.    Unum Holding Company (which is owned by Unum Group Corporation) and Unum Group Corporation split ownership of Unum Life Insurance Company of America.

144.    Unum Group Corporation, the Paul Revere Life Insurance Company (which is owned by the Paul Revere Corporation) and Unum Life Insurance Company of America (which is owned by Unum Holding Company and Unum Group Corporation) split ownership of Provident Life and Accident Insurance Company.

145.    The corporate offices of Unum Group Corporation remained in Chattanooga, Tennessee and Unum Group Corporation began adjusting claims on Unum Life Insurance Company of America policy(ies) on an integrated basis at Unum Group Corporation's corporate offices in Chattanooga.

146.    Members of the Board of Directors of Unum Group also serve on the Board of Directors for Unum Life Insurance Company of America.

147.    Unum Life Insurance Company of America is not an employing entity, given that all personnel "working for" Unum Life Insurance Company of America are Unum Group employees.

148.    Unum Group so dominates its subsidiary Unum Life Insurance Company of America that Unum Group Corporation has complete control and domination of its subsidiary's finances, policies and business practices. Unum Life Insurance Company of America has no substantial separate existence of their own.

149.    In filings with the Securities and Exchange Commission, Unum Group Corporation designates Unum Life Insurance Company of America as a wholly owned subsidiary.

150.    In filings with the Securities and Exchange Commission, Unum Group Corporation lists, as Unum Group income, all of the income received by the wholly owned subsidiary Unum Life Insurance Company of America.

151.    In filings with the Securities and Exchange Commission, Unum Group Corporation designates, as liabilities of Unum Group Corporation, the liabilities of Unum Life Insurance Company of America.

152.    Unum Group Corporation is the "ultimate controlling person" as that term is used in the insurance holding act, for Provident Life and Accident Insurance Company, Paul Revere Corporation, Unum Life Insurance Company of America, and First Unum Life Insurance Company.

153.    In calendar year 1999 Paul Revere Life Insurance Company had no

employees, and has had no employees since that time, with all employees performing services Paul Revere Life Insurance Company being Unum Group Corporation employees.

154.    Unum Life Insurance Company of America currently has no employees, and has had no employees for years. All employees performing services for Unum Life Insurance Company of America are Unum Group Corporation employees.

155.    Provident Life and Accident Insurance Company currently has no employees, and has had no employees for years. All employees performing services for Provident Life and Accident Insurance Company are Unum Group Corporation employees.

156.    First Unum Life Insurance Company currently has no employees, and has had no employees for years. All employees performing services for Unum Life Insurance Company of America are Unum Group Corporation employees.

157.    The general service agreements between Unum Group Corporation and the insurance subsidiary Defendants of Unum Group Corporation provide that Unum Group Corporation agrees to, under certain circumstances, indemnify its subsidiary insurance corporations for certain acts of Unum Group Corporation employees.

158.    The general service agreements between Unum Group Corporation and the subsidiary Defendant insurance companies provides that at all times, the employees performing services for claims arising from the subsidiary insurance company's policies, will remain Unum Group Corporation employees.

## ALTERNATIVE CAUSE(S) OF ACTION

159.     Should this Honorable Court determine the Plaintiff may not recover

pursuant to 29 U.S.C. § 1132 (a)(1), or should the Defendant's place the Plaintiff back

"on claim" and pay all past due benefits after the filing of this lawsuit, then the Plaintiff

pleads in the alternative, the following counts, Counts II, III, and IV, pursuant to 29

U.S.C. § 1132 (a)(3).

## COUNT II

## ACTION AGAINST UNUM LIFE INSURANCE COMPANY OF AMERICA FOR BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. § 1104 AND 1105

160.     Plaintiff adopts and incorporates all of the paragraphs above as though

fully set forth herein.

161.     Upon information and belief, Unum Life Insurance Company of America

provided services for the Plan(s).

162.     Unum Life Insurance Company of America is a plan 'fiduciary' as that

term is defined within 29 U.S.C. § 1002(20).

163.     Unum Life Insurance Company of America is charged with certain duties

as a fiduciary of the plan, to include those duties set forth within 29 U.S.C. § 1104.

164.     Unum Life Insurance Company of America failed to discharge its

fiduciary duties with the care, skill, prudence and diligence that a prudent man acting

in a like capacity or familiar with such matters would have used.

165.     Upon information and belief, Unum Life Insurance Company of America

contracted with Defendant Unum Group Corporation for the purpose of allowing

Defendant Unum Group Corporation to manage the claims process and for Unum Group employees to make the determination as to the Plaintiff's entitlement to benefits.

166.    The Defendant Unum Group Corporation's exercise of control over the management of the Plan(s) thereby caused the Defendant Unum Group Corporation to be deemed a "fiduciary" as that term is defined within 29 U.S.C. § 1002(20).

167.    The Defendant Unum Group Corporation failed to discharge its fiduciary duties with the care, skill, prudence and diligence that a prudent man acting in a like capacity or familiar with such matters would have used in Unum Group's management of the Plaintiff's claim. Therefore, the Defendant Unum Group Corporation breached its fiduciary duties as set forth within 29 U.S.C. § 1104.

168.    Unum Life Insurance Company of America participated knowingly in and knowingly undertook to conceal acts and/or omissions of the Defendant Unum Group Corporation, thereby allowing the actions and/or omissions of the co-fiduciary Unum Group Corporation to breach Unum Life Insurance Company of America's fiduciary duties as set forth within 29 U.S.C. § 1104.

169.    Unum Life Insurance Company of America failed to comply with the fiduciary's duties as set forth within 29 U.S.C. § 1104 thereby enabling the Defendant Unum Group Corporation to commit said breach of fiduciary duty.

170.    Unum Life Insurance Company of America had knowledge of said breach of the fiduciary duty by the Defendant Unum Group Corporation and failed to make reasonable efforts to remedy the breach.

171.    Therefore, pursuant to 29 U.S.C. § 1105, Unum Life Insurance Company of America is liable for the breach of their co-fiduciary Unum Group Corporation.

172.    As a direct and proximate result of the failure of Unum Life Insurance Company of America to carry out their duties as a fiduciary of the plan(s) pursuant to 29 U.S.C. § 1104, and furthermore as a direct and proximate result of the liability of Unum Life Insurance Company of America for the breach of their co-fiduciary Unum Group Corporation, pursuant to 29 U.S.C. § 1105, the Plaintiff has been damaged by the breaches of fiduciary duties described herein, and hereby requests this Honorable Court make a determination as to the Plaintiff's entitlement to future benefits, and specifically, determination as to whether or not the Plaintiff meets the definition of the term disability as set forth within the Plan(s) at issue, or in the alternative requests this Honorable Court to appoint a special master to serve in place of the Defendant fiduciaries, and remove the Defendant fiduciaries given their conduct as described herein, and allow said special master to make any future determinations with regard to the Plaintiff's entitlement to benefits under the Plan(s) described within the complaint.

## COUNT III

**ACTION AGAINST THE DEFENDANT UNUM GROUP CORPORATION FOR BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. § 1104 AND 1105.**

173.    Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

174.    The Defendant Unum Group Corporation, by way of a service agreement with the Unum Life Insurance Company of America, performed administrative duties

with regard to the Plaintiff's claim for benefits.

175.    The Defendant Unum Group Corporation, as the corporation which owns 50% or more of the combined voting power of all classes of stock of Unum Life Insurance Company of America, is a "fiduciary" and "party in interest" as those terms are defined within 29 U.S.C. § 1001, et. seq.

176.    As such, the Defendant Unum Group Corporation is charged with certain duties as a fiduciary of the plan(s), to include those duties set forth within 29 U.S.C. § 1104.

177.    Unum Group Corporation failed to discharge its fiduciary duties with the care, skill, prudence and diligence that a prudent man acting in a like capacity or familiar with such matters would have used.

178.    Unum Life Insurance Company of America contracted with Defendant Unum Group Corporation for the purpose of allowing Defendant Unum Group Corporation to manage the claims process and for Unum Group employees to make the determination as to the Plaintiff's entitlement to benefits.

179.    The Defendant Unum Group Corporation's exercise of control over the management of the plan(s) thereby caused the Defendant Unum Group Corporation to be deemed a "fiduciary" as that term is defined within 29 U.S.C. § 1002(20).

180.    The Defendant Unum Group Corporation failed to discharge its fiduciary duties with the care, skill, prudence and diligence that a prudent man acting in a like capacity or familiar with such matters would have used in Unum Group's management

of the Plaintiff's claim. Therefore, the Defendant Unum Group Corporation breached its fiduciary duties as set forth within 29 U.S.C. § 1104.

181.    Defendant Unum Group Corporation participated knowingly in and undertook to conceal, acts and/or omissions of Unum Life Insurance Company of America thereby allowing the actions and/or omissions of Unum Life Insurance Company of America to breach Unum Group Corporation's fiduciary duties as set forth within 29 U.S.C. § 1104.

182.    Defendant Unum Group Corporation failed to comply with the fiduciary's duties as set forth within 29 U.S.C. § 1104 thereby enabling the Defendant Unum Life Insurance Company of America to commit said breach of fiduciary duty.

183.    Defendant Unum Group Corporation had knowledge of said breach of the fiduciary duty by Unum Life Insurance Company of America failed to make reasonable efforts to remedy the breach.

184.    Therefore, pursuant to 29 U.S.C. § 1105, Defendant Unum Group Corporation is liable for the breach of its co-fiduciary Unum Life Insurance Company of America.

185.    As a direct and proximate result of the Defendant Unum Group Corporation's failure to carry out its duties as a fiduciary of the plan(s) pursuant to 29 U.S.C. § 1104, and furthermore as a direct and proximate result of the Defendant Unum Group Corporation's liability for the breach of its co-fiduciary Unum Life Insurance Company of America, pursuant to 29 U.S.C. § 1105, the Plaintiff has been damaged by

the breaches of fiduciary duties described herein, and hereby requests this Honorable

Court make a determination as to the Plaintiff's entitlement to future benefits, and

specifically, determination as to whether or not the Plaintiff meets the definition of the

term disability as set forth within the Plan(s) at issue, or in the alternative requests this

Honorable Court to appoint a special master to serve in place of the Defendant

fiduciaries, and remove the Defendant fiduciaries given their conduct as described

herein, and allow said special master to make any future determinations with regard to

the Plaintiff's entitlement to benefits under the plan described within the complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this court find jurisdiction and

venue appropriate, and after trial, grant the Plaintiff the following relief:

a.   Award the Plaintiff past benefits due and payable under the terms of the

employee welfare benefit plan/insurance policy(ies) and/or pension plan

pursuant to 29 U.S.C. § 1132(a)(1), or in the alternative 29 U.S.C. §

1132(a)(3);

b.   For a declaratory judgment as to the Plaintiff's entitlement to future

benefits and an appropriate order directing the Defendant to pay all

similar claims of the Plaintiff in the future pursuant to 29 U.S.C. § 1132

(a)(1), or in the alternative 29 U.S.C. § 1132(a)(3);

c.   Should the Defendants pay all past due benefits, Plaintiff requests this

Honorable Court enter a declaratory judgment as to the Plaintiff's

entitlement to future benefits, along with entering an appropriate order directing the Defendant to pay similar claims to the Plaintiff in the future pursuant to 29 U.S.C. § 1132(a)(3), or in the alternative, for the Court to remove the Defendants from their fiduciary roles in the administration of the Plan(s), and to appoint a special master to substitute for those Defendants, with the special master having the authority to make all determinations as to the Plaintiff's entitlement to future benefits;

d.    For a judgment against the Defendants awarding the Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132 (g)(1);

e.    For an order enjoining the Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of the Plaintiff's claim;

f.    For an order finding the Defendants jointly and severally liable either as direct fiduciaries and/or co-fiduciaries for the breaches described herein;

g.    For an ordering finding the Defendant Unum Group Corporation jointly and severally liable with the Defendant Unum Life Insurance Company of America for any award of damages granted pursuant to 29 U.S.C. § 1132 (a) (1);

h.    For an order requiring Defendants to provide the Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a

finding that the Plaintiff is disabled under the Plan(s);

i.       Such other relief as may be deemed just and proper.


Respectfully submitted,

/s/  *Thomas O. Sinclair*
Thomas O. Sinclair
Lee P. Fernon, Jr.
Sinclair Law Firm, LLC
2100-A SouthBridge Parkway
Suite 336
Birmingham, AL 35209
T:  205.868.0818
F:  205.868.0894
E:  tsinclair@sinclairlawfirm.com
      lfernon@sinclairlawfirm.com

**ATTORNEYS FOR PLAINTIFF**